## LOUIS C. IAUCH

### v.

## PAULINE DE SOCARRAS et al.

[Filed October 16th, 1898.]

After a judgment creditor has filed a bill for the benefit of himself alone, to set aside a fraudulent conveyance of land made by the judgment debtor, who is still alive, and to establish the lien of the judgment, other judgment creditors are not entitled to join as parties complainant against the protest of defendants, though complainant consents.

In the matter of the petition of Mulligan & Brazo to be admitted as parties complainant.

On motion to vacate an order admitting said petitioners as parties complainant in the suit.

*Mr. Thomas P. McKenna* and *Mr. Frank P. McDermott*, for the motion.

*Mr. Thomas P. Fay*, *contra.*

PITNEY, V. C.

The original bill in this cause was filed on the 8th of February, 1896. It is based upon a judgment recovered by the complainant, Iauch, against Mrs. Pauline de Socarras on the 6th of February (two days before the filing of the bill), in the supreme court of this state, and an execution issued forthwith thereon, levied by the sheriff of Monmouth county upon certain lands described in the bill. It sets forth that Mrs. de Socarras was seized of the premises in her own right prior to the recovery of the judgment, and after incurring the indebtedness which was its foundation, and that on the 8th of November, 1895, she conveyed the lands to a third person, and on the same day that third person reconveyed them to her in trust for the benefit of her son, Rudolfo. The charge of the bill is that this family settlement was void as against the complainant, and prays that the deeds of settlement from the third party to herself, as trustee for her son, may be declared to be void as against the complainant, and that the title of the premises may be decreed to be reinvested in her, so that they may be sold under the execution for the satisfaction of the judgment and a good and clear title given therefor to the purchaser thereof. There is no prayer that they may be sold for the benefit of creditors generally.

This bill, as originally framed, did not make the son, Rudolfo de Socarras, Jr., a party defendant, and was met with a demurrer for want of parties, and that demurrer was sustained. The bill was then amended by adding Rudolfo as a party. Another gen-

eral demurrer was then interposed, which was overruled. An appeal was taken from the order overruling the demurrer, which was dismissed and the cause remitted.

In September, 1897, the defendants filed a joint and several answer and cross-bill. By the first they alleged a consideration for the settlement, and by the last set up what was claimed to be an equitable defence to the complainant's judgment, and prayed that it be declared not binding in equity upon Mrs. de Socarras. A replication was filed to this cross-bill, and the cause was at issue and came on for hearing and trial before me as vice-chancellor.

On the second day of the hearing, counsel appeared for the petitioners above named—Milligan & Brazo—and asked permission to cross-examine the witnesses. It then appeared that on the 26th of June, 1897, more than a year after the filing of the bill, the petitioners had made an *ex parte* application to the court, by a petition which set forth that they had recovered judgment on the 30th of June, 1896, against Mrs. de Socarras in the circuit court of the county of Monmouth, but not stating the date of the accrual of the debt upon which it was founded, and that the bill in this cause was a creditor's bill filed by Iauch, "for the benefit of himself and all other creditors of said Pauline de Socarras who shall in due time come in and contribute to the expenses of the suit." On the strength of that allegation in the petition, and without any notice to either of the parties, an advisory master advised the order now brought in question, which directed that "the said petitioners be and they are hereby admitted as a party complainant to this suit." That order was made on the 6th of July, 1897.

Neither of the parties to the original suit had any notice of it, and the appearance, at the hearing, of counsel for petitioners was a surprise to them. After some discussion, the counsel for complainant agreed in open court that the petitioners might be admitted as parties complainant, provided they did not thereby gain any priority over the complainant's judgment, but should come in, if at all, subject to his judgment. These terms were consented to by the counsel of the petitioners, but not by the

.counsel of the defendants, and the latter gave notice of a motion to vacate the order of July 6th, 1897, admitting the petitioners as complainants in the cause, upon the grounds, first, that said order was improperly, unadvisedly and inadvertently made, and second, that the order is illegal and contrary to the practice of the court in such cases.

The facts as above set forth raise a nice and important question of practice, which was elaborately argued, and has received careful consideration.

The complainant's bill contained no statement or admission that it was filed for the benefit not only of himself, but of all those creditors who might choose to come in and contribute to the expense of the suit. The allegation of the petition in that regard was untrue, and misled the advisory master into making an order, without notice to any of the parties, which cannot stand for a moment, unless the character of the suit is such as that the petitioners had an absolute right to be admitted as parties complainant, without regard to the allegations of the bill.

The consent given at the hearing by the counsel for the complainant removes a part of the difficulty. But the question still remains, whether the order can stand against the protest of the defendants.

I had occasion to consider the question in some of its aspects in the recent case of *Mallory* v. *Kirkpatrick, 9 Dick. Ch. Rep. 50* (at *p. 56*), and have since taken the trouble to look at most of the authorities, with the following result:

That class of creditors' bills in which the suit can properly be said to be necessarily brought for the benefit of other creditors besides the complainant, comprise those which seek to reach, establish and administer assets in the hands of a trustee who holds them either voluntarily or, by force of circumstances, involuntarily, for the benefit of all the creditors. They may be classed as follows:

*First.* Suits to administer the estate of a decedent held by an executor or administrator, and apply the same to the payment of his debts.

*Second.* Where a living creditor voluntarily assigns property

to a trustee for the benefit of his creditors, and a creditor seeks to have that trust administered.

*Third.* Where there is an assignment by operation of law for the equal benefit of the creditors, such as occurred in all instances of attachments against foreign or absconding debtors under our statute until the recent change in that respect.

*Fourth.* Cases where a creditor of a corporation seeks to reach unpaid subscriptions of stock, as in *Wetherbee* v. *Baker, 8 Stew. Eq. 501 ;* and see *Mallory* v. *Kirkpatrick, 9 Dick. Ch. Rep. 50.*

*Fifth.* A creditors' bill, under our Chancery act (§§ *88, 94*), in which equitable assets are reached by a receiver, and are all subject to the debts of the defendant, but are not distributed *pari passu,* and the complainant is first paid. As to this class of cases, see *Whitney* v. *Robbins, 2 C. E. Gr. 360.*

In all these cases the property reached becomes assets in the hands of the court, to be distributed among the creditors either equally or with certain priorities.

A *sixth* class is that now before the court, where a single judgment creditor of a living debtor obtains a lien upon real estate, or, by execution, on leviable chattels, and asks the aid of the court either to perfect an equitable title already in the defendant in execution or to set aside a fraudulent conveyance made by him to a third party. Here the prayer and remedy are simply to establish the lien of his judgment, or, in case of leviable chattels, of his execution.

This last class of cases, and the rights and remedies of the parties, are in marked contrast with those under the other classes above enumerated. In this last class the complainant, if he has the first judgment, has, of course, the first lien, and the result of my research is that, in this country at least, the surplus, if any, of the proceeds of the sale of real estate does not necessarily become assets in the hands of the court, to be marshaled and distributed among the other creditors without regard to the date of the accrual of their debts. And here, it seems to me, is found the true test as to whether a suit is or is not brought for the benefit of other creditors besides the complainant. Is its object, scope and natural result to recover and establish a

fund which shall or may be administered by the court for the benefit of all creditors of a certain debtor?

In the last class of cases above referred to it is to be observed, in the first place, that no creditor can obtain any part of the proceeds of the sale of real estate of a living defendant unless he has a judgment, or of leviable chattels unless he has an execution. In the next place, it is to be observed that where a conveyance by the debtor is attacked as fraudulent and void as against a judgment creditor, an adjudication that the conveyance is void as to the complainant's judgment creditor is not necessarily an adjudication that it is void as to all other judgment creditors, since it may be void as to one and not as to another.

By the well-settled rule in this state a voluntary conveyance is held to be conclusively fraudulent as to existing creditors without regard to any actual intent of the grantor to hinder, delay or defraud such creditors, but as to subsequent creditors it can be attacked only on the ground of such actual intent. Hence, a conveyance may be held void as to one creditor and valid as to others. And if there are several successive judgments founded on debts accruing at different times, some of which accrued prior to the voluntary settlement and others after the voluntary settlement, and the proceeds of the sale of real estate of a living debtor are brought into court, so much as is necessary for that purpose may be applied to the payment of those judgments founded upon debts which accrued prior to the settlement, and the remainder be held to be free and clear of any lien on the part of those judgments which are founded upon debts which accrued after the date of the voluntary conveyance, although the latter may be prior in date of recovery to the others. In the present instance, the case, as so far developed, indicates that the settlement in question may be properly held valid as to one of these creditors and invalid as to the other.

An examination of the cases seems to me to show that some confusion has arisen in the minds of the profession from the circumstance that a rule different from what I have just stated prevailed for many years, and possibly still prevails, in England. There, by a long line of decisions, it was held, for many

years at least, that where a settlement of real estate was made
which was fraudulent, under the statute of *13 Elizabeth*, as to a
then existing creditor, and was set aside at the suit of that or
any other creditor as fraudulent on· that account, the whole pro-
ceeds of the sale of such property became at once assets to be
divided among all the creditors, both prior and subsequent, and
whether judgment creditors or creditors at large, and whether
there was any actual fraud or not.   The fund once seized by the
court and turned into money was treated precisely like that of
the estate of a decedent or of an insolvent, and distributed among
the creditors.   It so happened that in many if not most of the
instances where family settlements were set aside as void against
creditors, such action and decree were not had until after the
death of the settlor and debtor, because the real estate during his
lifetime was not ordinarily liable to sale for debt, and only be-
came subject to sale for that purpose after his death, and in such
case the suit at once assumed the aspect of an ordinary suit to
administer the estate of a decedent, such as I have above referred
to—class No. 1.   But the same remedy was, in a few· instances,
applied in cases where the debtor was still living.   *Spirett* v.
*Willows, 3 De G., J. & S. 293*, is an instance of that kind.   The
doctrine of the earlier cases in England was somewhat modified
by the later cases, and has never been adopted in this state.
The English cases will be found reviewed by Mr. May, in his
book on *Fraudulent Conveyances pp. 45–50*, and again at *pp.
515–522;* and by Professor Bigelow, in his treatise on *Frauds
pp. 80 et seq.;* and see *Wait Fraud. Conv.* §§ *104 et seq.*   They
are too numerous to be cited at length, but perhaps the length
to which the judges there went in the direction indicated is ap-
proximately shown by what was said by Vice-Chancellor Shad-
well, in *Scarf* v. *Soulby*, as reported in *16 Sim. 344:* "It is
stated in the bill that the settlor was embarrassed and insolvent
when he made the settlement, but that is superfluous. It appears,
from what Lord Hardwicke says in *Lord Townshend* v. *Wind-
ham* [*2 Ves. Sr. 1*] that it is quite enough to prove that he was
indebted at the time.   Lord Hardwicke says: ' I know no case
on the *13th Elizabeth*, where a man, indebted at the time, makes

a mere voluntary conveyance to a child without consideration and dies indebted, but that it shall be considered as part of his estate for the benefit of his creditors.' "

But that statement of the rule was not concurred in by Lord Cottenham on appeal, as reported in *1 Macn. & G. 364* (at *p. 374*), where he declares that a single debt, without regard to insolvency or embarrassment, is not sufficient, and that the decree of the vice-chancellor could not be supported, there being no proof of any indebtedness at the time of the settlement, or that sufficient property was not left after the settlement to pay his debts; but he referred it to a master to inquire on that subject.

In all those cases in which the fund sought to be reached becomes assets in the hands of the court, to be divided among the creditors at large, it is proper for the complainant to declare that he brings the suit in behalf of himself as well as of all the other creditors who may come in; but a careful reading of the cases shows that it is not at all necessary for him so to do, and that it makes no difference whether he does so declare or not; and unless he is settled with before the case goes to a decree, other creditors may come in, not, indeed, as complainants or co-complainants, but as claimants of the fund when once it is in the hands of the court. And this practice has been applied in England, as I have observed, to cases of suits brought in the lifetime of the debtor, to set aside conveyances of real estate made by him. But I think it has no application in this state, and that a suit brought by one judgment creditor to set aside a conveyance of real estate or to perfect an equitable title in real estate in his judgment debtor, is not a suit brought for the benefit of all other creditors besides himself.

This very question seems to have been stirred, and I think substantially decided, in the case of *Voorhees* v. *Reford, 1 McCart. 155*. There creditor No. 1—Cramer—obtained judgment and filed a bill against Reford to set aside a conveyance made by him to his wife, precisely as was done here. After the filing of that bill, creditor No. 2—Corwin—recovered a judgment against Reford, and after him, creditor No. 3—Voorhees—recovered a judgment. Creditor No. 2—Corwin—filed a bill precisely like

that of Cramer, but did not make Voorhees, who had obtained
a judgment before Corwin's bill was filed, a party defendant.
In that state of things, Voorhees filed a supplemental bill in
the nature of a cross-bill, to be permitted to participate with the
complainants and enforce the lien of his judgment against the
property in controversy in those suits. Demurrer to this was
filed and the demurrer was overruled. In the argument of
counsel for complainant, as reported, the position was distinctly
taken that the third creditor could not get the benefit of the
previous suits by a mere petition, but must file a bill in which
he recognized the existence of the other suits. Chancellor
Green, in delivering judgment, declared that the first bill was
not a creditor's bill which inured to the benefit of all the credit-
ors of Reford equally, nor was it a bill having the avowed
purpose of having the conveyance from Reford and wife de-
clared fraudulent as against all creditors. He did, however,
say that such a bill might inure for the benefit not only of all
subsequent encumbrancers but of all other creditors. But he
says further that if the conveyance was set aside and the prop-
erty sold it would inure to the benefit of Cramer alone and the
residue of the property would remain under the control of the
alienee. And then he declares that, as Voorhees' judgment was
recovered after the bill of Cramer was filed, his claim must be
brought before the court either by an original bill or by a sup-
plemental bill, sustaining the position in the brief of counsel
that it could not be done by petition. That suit went to hear-
ing and relief was granted to all the judgment creditors, as
reported in *2 C. E. Gr. 367.*

The objection taken by defendants at the hearing to the ad-
mission of the petitioners as complainants in this case was that
defendants are entitled to a pleading from the petitioners and an
opportunity to answer it and contest their claim by itself in the
ordinary way, and that without that pleading the defendants, in
case they succeed in sustaining their defence as against the com-
plainant and obtain a decree, will not be able to set up that de-
cree as an estoppel against the petitioners, who will not be
bound thereby; and further, that the issues are not the same,

and that the original suit has progressed so far as that the inter-vention of these petitioners is too late and will disturb the progress of the suit. In effect, the jurisdiction of the court to compel the defendants to defend petitioners' claim except by bill and subpœna is denied.

The question presented is quite different from that which would arise if the complainant and the petitioners had originally joined in one bill on their several judgments. In that case the objection of multifariousness would have been met—whether successfully or not it is not necessary for me now to decide—by what was said by Chancellor Kent in the famous case of *Brink-erhoff* v. *Brown, 6 Johns. Ch. 139* (at *pp. 151, 156*). At *p. 151* he says: "It is an ordinary case in this court for creditors to unite, or for one or more, on behalf of themselves and the rest, to sue the representative of their debtor in possession of the assets and to seek an account of the estate." And he continues: "There is no sound reason for requiring the judgment creditors to separate in their suits when they have one common object in view which in fact governs the whole case. There is no par-ticular matter in litigation peculiar to each plaintiff, and if they were obliged to sue separately, it may be pertinently asked, *Cui bono?*" Then comes (at *p. 157*) his famous and familiar state-ment of the rule as to multifariousness. But the doctrine of that case must be confined, when it is used for settling princi-ples, to the circumstances. There was in that case, as in *Wether-bee* v. *Baker, 8 Stew. Eq. 501*, a corporation or a *quasi* corpora-tion, in which the stockholders were charged in the bill with being liable for unpaid subscriptions of stock, and that the affairs were being wound up by trustees who had the estate of the *quasi* corporation in their hands, and that those trustees were stockholders, " and that they ought, under the circum-stances, to be regarded by the creditors as the *bona fide* holders of stock not subscribed for," &c., and the bill prayed for a dis-covery of the names of the stockholders, the amount of their subscriptions, how much had been paid thereon and the balance due from each, the names of the stockholders at the time the company was dissolved and the number of shares owned by

them, and that the defendants be decreed to pay for the stock subscribed, and to sell the property of the company and apply the proceeds to pay the plaintiffs. So that, in point of fact, an examination of the bill in that case shows that it was a bill to wind up a corporation and to divide the assets among its creditors, and the prayer for relief against certain fraudulent conveyances, &c., was a mere incident to the general purpose of the bill.

Such, also, was the case in *Strike's Case,* much relied upon by the counsel for petitioners, reported in *1 Bland 57,* and see particularly *pp. 59, 71, 84, 93;* also reported, on appeal, in *2 Harr. & G. 191, sub nomine Strike* v. *McDonald & Son,* where the doctrine as contended for by the petitioners' counsel is stated at *p. 233.* The report in *Bland,* however, is the better one, and a close examination of it shows that there the debtor, Rogers, made certain conveyances, alleged to be fraudulent, to Strike, and afterwards applied to the court for the benefit of the insolvent laws, and procured Strike, the fraudulent grantee, to be named as his trustee, so that Strike became an assignee in insolvency; and the object of the bill was not only to set aside the prior fraudulent conveyances to Strike, but to compel him to execute the trust resulting from his appointment as trustee under the insolvent proceedings. This aspect of the case brings it within the classes of pure creditors' bills to which I have above referred and destroys its value as a precedent in the present instance. The learned chancellor cites, in his foot-notes, several unreported cases decided in the Maryland courts, which, upon examination, prove to be of the same character. *Hammond* v. *Hammond, 2 Bland 306,* decided by the same judge, was a suit against the heirs, devisees and personal representatives of a decedent to administer the estate, and, in his opinion, he gives a valuable treatise upon the subject of creditors' bills to settle estates.

The cases in this state relied upon by the petitioners are as follows:

*Hazen* v. *Durling, 1 Gr. Ch. 133* (at *pp. 137, 138*). That was a suit by one joint surety on an administrator's bond against

the personal representatives of the co-surety, and the original surviving administrator, and the administrator of the administrator. It is clearly a case of proceeding against an estate in the hands of personal representatives, and is an example of an original creditor's bill to administer an estate.

Next is *Bullock* v. *Zilley, 1 Halst. Ch. 77,* which was the simple case of a legatee suing for his share of the residue of an estate in the hands of the executor.

Next is the case of *Lore* v. *Getsinger, 3 Halst. Ch. 191.* There a suit by three small judgment creditors uniting in one bill, filed under the sections of the Chancery act, was sustained. But the case was reversed on appeal (*3 Halst. 639*), the opinion not being reported.

The next case in order of time is *Hunt* v. *Field, 1 Stock. 36.* That was a case of foreign attachment, where one creditor issued an attachment, and levied and attached certain goods and chattels which were claimed by a third party, and then the creditor, on the strength of his attachment, filed a bill to set aside the conveyance as fraudulent. Chancellor Williamson (at *p. 42*) says : " The bill ought to have been framed for the benefit of the complainant and such other creditors of the defendant as shall come in and seek relief, and contribute to the expense of the suit." Of course, under the statute regulating attachments as it then stood, all the creditors under the attachment stood on an equal footing, and the criticism of the chancellor was just. An attachment operates as an involuntary assignment in bankruptcy or insolvency, and places the whole estate of the debtor in the custody of the court.

The next case is *Williams* v. *Michenor, 3 Stock. 520,* which was a precisely similar case. It was there held that several persons issuing successive attachments might unite in one suit for the purpose of setting aside fraudulent conveyances.

Next is cited *Romaine* v. *Hendrickson, 9 C. E. Gr. 231.* That was a bill by one of several heirs and devisees of the testator of a will which gave his executors power of sale, to set aside conveyances made by them under that power, and in its character is similar to that of one of several legatees standing

in equal position who sues in behalf of himself and the other legatees for a discovery from the executor of the estate, and for a settlement thereof.

Next, petitioners rely upon what was said by Chancellor Runyon in *Kuhl* v. *Martin, 11 C. E. Gr. 60* (at *p. 65*, bottom). The circumstances there were extremely complicated, and the chancellor, in order to prevent a sacrifice, ordered all the property to be sold by a receiver, free of encumbrances, and the proceeds brought into court, thus establishing a fund in the custody of the court to be distributed among the several parties equitably entitled, as their several rights should subsequently appear. What was said as to subsequent judgment creditors coming in must be construed in view of the peculiar situation of affairs to be dealt with by the chancellor.

Next we have *Thompson* v. *Fisler, 6 Stew. Eq. 480.* The bill, as filed, was declared to be for the benefit of the complainant and all other creditors who may come in, &c., but whether relief was prayed as to real estate or only as to equitable assets, does not appear except so far as it may be inferred that land was involved from the circumstance that other judgment creditors were made defendants. The complainant failing to prosecute the suit, one of the judgment creditors procured an order changing his position in the cause to that of a complainant, and then moved for leave to prosecute the suit in that character, and his motion was granted. It is to be inferred from some of the language used by the chancellor that he overlooked for the moment the distinction which I have pointed out between a creditor's bill proper and a suit to subject lands to the lien of the judgment.

Next is the case of *Wetherbee* v. *Baker, 8 Stew. Eq. 501,* which was a bill by creditors of the corporation to compel the stockholders to pay their debts out of unpaid subscriptions for stock, and it was held that all the creditors must come in equally and that all their debts be ascertained, and the total indebtedness and deficiency of other assets be ascertained, as a necessary basis for ascertaining the amount of the unpaid subscriptions to be col-

lected for the purpose of liquidating the debts. In some of its aspects it resembles *Brinkerhoff* v. *Brown, 6 Johns. Ch. 139.*

Next we have *Coddington* v. *Bispham, 9 Stew. Eq. 574,* which was, in effect, a suit by legatees to administer the estate of a decedent for the benefit of creditors and legatees, and is of the same character as a suit by creditors for that purpose.

Next we have the case of *Jones* v. *Fayerweather,* 1 *Dick. Ch. Rep. 237,* in the court of appeals, and in connection with it the several cases there cited in the printed argument of the counsel of the appellants. These latter were all creditors' suits under the New York statute, which corresponds to section 88 *et seq.* of our Chancery Practice act, and each sought to reach equitable assets. The principal case—*Jones* v. *Fayerweather*—involved three separate suits, brought by three separate sets of creditors against an executrix of their deceased debtor, to compel her to account for property of the decedent which had been assigned or conveyed to her in the debtor's lifetime; in fraud of his creditors, and each was avowedly brought, and properly brought, for the benefit of all the creditors.

Lastly, in *Mallory* v. *Kirkpatrick, 9 Dick. Ch. Rep. 50,* suit was brought by a judgment creditor of a corporation which had not been put in the hands of a receiver, to recover money which was alleged to be in the hands of one of its officers, who held it in equity, in trust for the creditors; and it was held that such a suit must be brought for the benefit of all the creditors of the corporation, and it was suggested that a receiver would be necessary.

This review of the authorities in this state fails to produce a single precedent for the practice adopted by the petitioners in this cause; and those authorities, as well as those in other states, are all, with the single exception of *Thompson* v. *Fisler,* properly ranged under one or the other of the first five classes above stated.

I think the practice adopted in *Voorhees* v. *Reford, 1 McCart. 155,* is the safer one, and I am unwilling to sanction that here proposed to be introduced.

In coming to this conclusion I am not unmindful of the dis-

position of the court to adopt all reasonable rules of practice which will prevent multiplicity of suits by the consolidation of litigation, but I cannot see my way to override the clear right of the defendants in this cause to be brought into court, as against the petitioners, in the regular way, by bill and subpœna, and I think the proposed practice would lead to confusion and inconvenience.

I will advise an order vacating the order admitting the petitioners as complainants, with costs.