JOHANSON et ux. v. CUDAHY PACKING CO.

No. 6302.   Decided December 18, 1941.   (120 P. 2d 281.)

See 71 C. J. Workman's Compensation Acts, sec. 1605; Assignability of employer's claim against third person, notes 19 A. L. R. 793; 37 A. L. R. 847; See also 28 R. C. L. 834 (8 Perm. Supp. 6259).

*A. H. Hougaard* and *E. LeRoy Shields,* both of Salt Lake City, for appellant.

*M. E. Wilson* and *Robert C. Wilson,* both of Salt Lake City, for respondent.

PRATT, Justice.

A reconsideration of this case upon petition for rehearing convinces the writer that certain errors have crept into the minds of counsel and this court which should be corrected.

There is no cause and effect relationship between the alleged tort of respondent and the payment of the award by the insurance carrier. Death, in this case, created no obligation on the part of the insurance carrier to pay. The case is not similar to payment upon a life policy where insured's death is the result of a tort of a third party. The obligation of the carrier to pay in this case arises from the act of an independent agency, the election of the dependents to take compensation. It is purely statutory. We do not have, here, a case of an insurance company trying to recover in tort for injuries sustained by it as the result of the tort. The obligation paid is not one which might have fallen upon the

shoulders of respondent, had the dependents elected to sue in tort.

The cause of action in tort which was available to the dependents died when they elected to take compensation. It was not the payment of the award which wiped out that cause of action. This is not a case of an insurer paying an obligation of another, for which, in equity and good conscience, it should be reimbursed. Even though respondent were sued and found liable in tort, it would not be obligated to pay the award, but would be obligated to pay damages. The insurance carrier's obligation to pay the award arose out of two facts: (1) the injury of the employee in the course of his employment, and (2) the election of the dependents to take compensation. Under those two facts the carrier's obligation to pay would exist even though it developed that respondent was not responsible in tort for the death of the employee.

The statute does not assign the cause of action in tort that was available to the dependents, as that cause dropped out of the picture before the right of the carrier to institute action against respondent was born from payment of the award. What the statute does is to create a new cause of action for the benefit of the carrier, who, but for that statute, would be unable to trace any connection between its payment of the award and the alleged tort of respondent. The statute affords the carrier the means of establishing a judgment in which it is, by law, granted an interest to the extent of the award paid and the expenses of the action. The respondent is hardly in a position to complain that any excess of the judgment over and above the interest of the carrier goes to the dependents. If that situation develops it simply means that the statutory award is less than the actual loss sustained by those dependents. To pay them the difference does not pay them more than they lost. It certainly is not a gratuity to them. The amount of loss they sustained is determined by the rule for measuring damages in such death action. The carrier's interest in the amount

of that loss when reduced to judgment is measured by the amount paid out by the carrier as an award, plus the expenses of the action.

What this case decides is: The statutory cause of action in favor of the employer or the carrier granted by 42-1-58, R. S. U. 1933 may be assigned. The assignees would have the right to sue for the full amount of damages, even though that amount is in excess of the award.

Objection has been raised to our vacating the judgment of dismissal in this case in view of the fact that the complaint was defective in failing to allege payment of the award. Our attention is invited to the fact that appellants stood upon their complaint and refused to amend. Just what would have been accomplished for appellants by an amendment as to payment, when the lower court had decided the cause of action could not be assigned is hard to see. The case was submitted upon the issue of whether or not the cause of action could be assigned. We decided it upon that issue. After holding that the cause of action can be assigned, to deprive appellants of an opportunity to amend their complaint upon an issue which now assumes an important role in the case would be to grasp at technicalities to defeat appellants.

If the facts do not justify an amendment, then there should be none and the case should again be dismissed. "Payment" means payment of such sum of money as our Workmen's Compensation Act provides shall be the full amount of the award. The action is not to be maintained upon an instalment payment. The carrier has no right to anticipate payment by an action under the statute to recover the amount of the award. Were such an anticipation permitted, the carrier might recover more than it actually had to pay out.

The matter of costs is solved by our determination that it was not error to vacate the judgment of dismissal.

Petition for rehearing denied.

MOFFAT, C. J., concurs.

LARSON, Justice: I vote to deny rehearing.

McDONOUGH, Justice: I vote to grant the rehearing.

WOLFE, Justice (dissenting from order denying petition for rehearing).

I concur in the view expressed by Mr. Justice PRATT in his opinion on motion for rehearing, that vacation of the judgment is proper under the circumstances. True, as respondent states, ordinarily when plaintiff has opportunity to amend and declines to do so and judgment of dismissal is rendered against him, and the court found correct in its final action, the judgment will not be reversed because the judgment was founded upon a wrong reason. But in this case the real and only question involved in the demurrer was that of assignability. The demurrer was on the ground that the complaint did not state a cause of action against "this defendant." Two other paragraphs specifically raised the question of right of assignability to the plaintiffs. The plaintiffs were willing to stand on their complaint as to that matter. They could do no other because if the cause was not assignable to them, they had no standing in court. The court below sustained the demurrer on a theory which permitted of no amendment; this court overturned the judgment of the lower court on the law question there presented but holds the ruling correct because under the theory developed by this court, entirely different from that on which the lower court sustained the demurrer, a required allegation was omitted. To deny plaintiff a chance to amend his complaint after this court has decided that the demurrer was rightly sustained but on a theory itself first introduced in our decision, would in effect deny the plaintiff his day in court.

A more troublesome matter is the question as to whether the employer or carrier must pay all the compensation be-

fore he is subrogated or can assign. Section 42-1-58, R. S. U. 1933, reads in that respect as follows:

"* * * and, if compensation is claimed and awarded, the employer or insurance carrier *having paid* the compensation shall be subrogated to the rights of such employee or his dependents to recover against such third person. * * *" (Italics added.)

I am of the opinion that the words "having paid" do not mean "having fully paid," but should be construed as having been inserted to permit of a determination between employer and carrier as to which had the right of action. The dependents elect and an award is made. This gives the dependents the right to compensation but still leaves the question as to whether the employer or carrier is subrogated. Both the employer and carrier are liable for the compensation but the employer is primarily liable. See *American Fuel Co.* v. *Industrial Commission,* 55 Utah 483, 187 P. 633, 8 A. L. R. 1342. In order to determine as between two who were liable the statute made payment of some compensation the test of which of the two was actually assuming payment. If the employer assumed the payment by having paid compensation he would be entitled to bring the action subject to paying over part of the recovery to the insurance carrier in case the carrier may have paid or reimbursed him. The words "having paid" appear only incidentally in the context. The main idea is that "if compensation is claimed and awarded, the * * * insurance carrier * * * shall be subrogated" etc. Ordinarily the employer would not be called on to pay it. But where the carrier was insolvent as in the American Fuel case, the employer would be required to pay it. The section may be interpreted to mean:

"* * * the employer or insurance carrier, whichever has assumed payment of the compensation, shall be subrogated * * *."

If the phrase "having paid the compensation" is interpreted to mean" having fully paid the compensation" or "having paid all the compensation" it would virtually de-

feat the purpose for which 42-1-58, R. S. U. 1933 was enacted. The whole section deals with the right of election and sets out the conditions attached to the election, one of which is that the carrier be subrogated. We do not conceive that the legislature would permit election on a condition which conferred a right on the one having to meet the consequences of election, and in the same section virtually take such right away.

If an award for the death be payable in installments it would be six years before an action could be brought. If a wage earner were totally and permanently disabled, the full compensation would not be paid for perhaps a life time. I cannot believe that the legislature intended to give the insurance company a right of action, but postpone it to a time when all witnesses and even the dependent might have disappeared or died. Moreover, it is quite unlikely that the Legislature intended that such carrier as happened to be liable for the payment of an award commuted to a lump sum would, by such fortuitous event, have such a great advantage as compared with the carrier who was liable for an award payable in weekly installments. To the suggestion that the dependents may all die before the award is fully paid and hence that it cannot be ascertained as to what the excess might be, the ready answer is that the third party is not concerned as to the division between the dependents and the carrier. He is at all events liable for the damages due to his negligence. In any event, any excess over any total compensation payable would go to the dependents. If they all died before six years had elapsed, the question would arise as to whether their estates or the carrier was entitled to the difference between what was paid and what would have been paid in six years, granted the dependents themselves have no vested right in the compensation for death. Such question would be one between the carrier and the representatives of the dependents. The third party tort feasor would have no interest in that controversy.

There is another possible construction of the phrase which could save it from self-nullification. The words "having paid" might be construed in the light of what the section meant to accomplish as meaning "having been obligated to pay." While language not ambiguous must generally be construed as it reads, where it is apparent that by such reading it would result in the legislature's undoing with one hand what it did with the other, giving a right, then virtually taking it away, the language should be construed to effectuate and not to nullify the obvious purpose. In *Silver King Coalition Co.* v. *Industrial Comm. of Utah,* 101 Utah 12, 116 P. 2d 771, it was stated that where there was no ambiguity and it was not necessary to save constitutionality or prevent absurdity, the language should be construed to mean exactly what it says. Where, as here, a single phrase of the context literally construed would defeat one purpose for which the whole context of the section was designed, such phrase should, if possible, be given a meaning harmonious with the purpose of the context. *Helvering* v. *New York Trust Co.,* 292 U. S. 455, 54 S. Ct. 806, 78 L. Ed. 1361; *Ozawa* v. *United States,* 260 U. S. 178, 43 S. Ct. 65, 67 L. Ed. 199; *Norville* v. *State Tax Commission,* 98 Utah 170, 97 P. 2d 937, 126 A. L. R. 1318.

If recovery of more than the total amount is had by the carrier or employer, the commission, if it concludes that the dependents would be better protected, can commute the total sum and order it paid to a trustee for periodic payments to the beneficiaries of the award.

On further consideration on the matter of whether 42-1-58 opens up the tort action to general assignability, I must conclude my opinion on the original hearing to be in error. I think counsel for defendant fundamentally in error in concluding that when 42-1-58 gave an election to take compensation it, in effect, suspended the residence of any right except a right to choose in the dependents, until they had elected. That fact is that dependents were recognized as invested with the right of action for the death of their intes-

tate, but with an additional right to elect compensation. Whether we consider that the action given by 104-3-11 with the class in which it resides is modified to include dependents instead of heirs, or a new action for the death where such death occurs in the course of the employment is by implication created makes but little difference. An action for the death was by 42-1-58 given to the dependents. It resided in them. In addition, the section gave them a right to choose *in its stead* compensation. Upon so choosing and receiving an award for compensation, the action formerly belonging to the dependents was available for the carrier or employer. The idea that on their intestate's death they had no vested right but only a vested choice of rights, an opportunity to reach out for one or the other, but no right until they did so choose, is incorrect. The idea that when they then chose compensation the other right became non-existent defeats the very logic of respondent's position because if it became non-existent there was nothing to which the carrier could be subrogated. The correct conception is that when the dependents elect to take compensation, their right to sue for the death by operation of the statute passed to the insurance company or employer, depending upon which assumed payment of the compensation, whether it be designated as an assignment by operation of law or a statutory subrogation. This court took occasion to develop with considerable thoroughness the distinction between legal and conventional subrogation in the case of *Martin* v. *Hickenlooper*, 90 Utah 150, 59 P. 2d 1139, 107 A. L. R. 762; but that distinction need not concern us in this case. All we need here concern ourselves with is that the cause of action formerly in the dependents is by their election vested by statute in the carrier upon an award in favor of the dependents. This transfer, by operation of law, of a tort action into another than the one originally vested with it, was, in effect an assignment without test of survivability.

But I see no connection between a statute placing in the employer or carrier the cause of action, formerly enjoyed

by dependents, and general assignability. I am unable to turn the corner in the logic. The legal phenomenon performed by the statute was to place in the employer or carrier on condition of election to take and an award of the compensation, the cause of action formerly residing in the dependents, but the statute went no further than to do that. It is true that a tort action at common law was not assignable because it did not survive. But there is nothing inherent in a tort action which makes it impossible for it to be assigned by operation of law. An action may not survive yet be made assignable or be given by law the attribute of assignability. In fact there is no real reason why a cause of action for tort should not itself survive and be passed to the heirs of those who had it. By the Statute of 4 Edward III Chapter 7 and 31 Edward III Chapter 2 passed in the year 1033 an action for the carrying away of goods and chattels was made to survive where the estate was enriched thereby. In 1833 by Statute 3 and 4 William IV chapter 42 a tort action affecting personal and real property survived but not actions for personal injury. See able expositions in *Sullivan* v. *Associated Billposters and Distributors,* 2 Cir., 6 F. 2d 1000, 42 A. L. R. 503. In certain cases the distinction between so-called personal actions and others becomes highly artificial when it comes to the matter of assignability and even survivability. There seems to be no real reason why a tort action for damage to an automobile (in some states made survivable), and damage to a person caused by negligence, should not both survive. True, when a person has been injured the damage is personal to him and the action is, therefore, said to be personal to him. Actio personalis moritur cum persona. But this fails to approach the case from the standpoint of the action of the wrongdoer. While the action is based on damages and not punishment, damages recovered and collected during the life of the injured would on death become transferable, and from a standpoint of public policy perhaps the cause of action should be also. There is no good reason why the wrongdoer should be

free of liability by the fortuitous event of the death of the one injured, by reason of causes independent of his negligence. The principle that "actio personalis moritur cum persona" involves a carry over from the ancient days when damage resulting from design (crime) were indistinguishable from damage resulting from "pure misadventure without fault." See dissenting opinion *Stover Bedding Company* v. *Industrial Commission,* 99 Utah 423, 107 P. 2d 1027, 1033, 134 A. L. R. 1006. There seems to be no basic reason why enrichment of the defendant's estate should be the sole test. "Derichment" of plaintiff's estate should be equally valid in this day of advancing refinement of ethical and social conceptions compared to the time of Edward III. However, this is a matter for the legislature and not for the judiciary. At all events assignability during the life of the holder of the cause of action does not depend on survivability. While this may remove any legal bar to the legislature's making the cause assignable, the fact remains that it has not done so except insofar as to permit it to lodge in the employer or insurance carrier. I am unable on more careful deliberation to see that this opens up the cause to general assignability. Therefore, in this regard I must recede from my former opinion.