2014 UT App 163

**Armando PIERUCCI, Plaintiff, Appellant,**

v.

**Marcheta PIERUCCI Defendant, Appellee.**

No. 20130379–CA.

Court of Appeals of Utah.

July 10, 2014.

⊛⊶9

Justin D. Heideman, for Appellant and Cross-appellee.

Don M. Torgerson and Mandie J. Torgerson, for Appellee and Cross-appellant.

Judge STEPHEN L. ROTH authored this Opinion, in which Judges GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

### Opinion

ROTH, Judge:

¶ 1 The district court dismissed Armando Pierucci's complaint, concluding that his claims were barred by res judicata and the statute of limitations and that he had not demonstrated that he had standing as a real party in interest to assert them. Armando appeals the dismissal, and we affirm on the ground that he has not demonstrated that he is a real party in interest. Our decision to affirm, however, does not preclude Armando from seeking any remedy suggested by rule 17 of the Utah Rules of Civil Procedure to reinstate the proceedings.

### BACKGROUND

¶ 2 In 1949, two brothers, Anselmo Pierucci and Victor Pierucci, each inherited an undivided one-half interest in the mineral rights to property in Carbon County.[1] When Anselmo died in 1984, he left a will transferring his one-half interest to Armando, who was one of Victor's sons. A 1988 quitclaim deed recorded in Carbon County indicates that Victor transferred his one-half interest to his daughter-in-law, Marcheta Pierucci.[2] After Victor died, Marcheta claimed an undivided one-half interest in the mineral rights.

¶ 3 Armando originally sued Marcheta in 2010, alleging breach of contract and other equitable claims based on the 1988 quitclaim deed transferring Victor's mineral rights interest to Marcheta. In that case, Armando sought to invalidate that deed and have title to the mineral interest devolve to him. Near the end of the discovery period, Armando engaged a handwriting expert, who concluded that the deed was "probably not" executed by Victor. Based on the expert's report, Armando moved to amend the complaint to add a claim of fraud. The district court denied his motion on the basis that "the new claim is significantly different from those claims previously pleaded." The court disposed of Armando's other causes of action by motion. Armando did not appeal from any of the rulings in the 2010 litigation, including the denial of the motion to amend.

¶ 4 In May 2012, Armando filed a new complaint against Marcheta, initiating the present case. This time he sought a declaratory judgment invalidating the deed due to

1. Because all the principal figures in this matter have the same surname, we refer to them by their first names to avoid confusion.

2. The 1988 deed actually transfers Victor's one-half mineral rights interest to Marcheta and her husband, John Pierucci, who was Victor's son. John has died, however, and for simplicity, we will refer only to Marcheta as the transferee in the 1988 quitclaim deed.

fraud based on forgery. In the complaint, Armando alleged that Victor died intestate; that Victor's other immediate family members, including Victor's wife and his son, John, were also deceased; and that Armando, as Victor's son, was Victor's heir. Armando asserted that although there is a 1988 deed transferring Victor's one-half interest in the mineral rights to Marcheta, Armando had reason to believe that the deed was a forgery. He further asserted that he "did not know that the Deed had been forged until he obtained the [handwriting] expert analysis" in August 2011. Marcheta responded to the complaint with a rule 12(b)(6) motion to dismiss. Utah R. Civ. P. 12(b)(6) (allowing the defendant to move for dismissal on the basis that the plaintiff has "fail[ed] to state a claim upon which relief can be granted"). She asserted three bases for dismissal. First, she contended that Armando lacked standing to invalidate the deed or assert fraud because he was not a real party in interest. Second, she argued that Armando's claims were barred by the doctrine of res judicata because they arose from the same operative facts as the contract and equitable claims he asserted in the 2010 complaint. Finally, Marcheta argued that the claims were barred by the seven-year statute of limitations because Victor transferred the mineral rights to Marcheta in 1988, twenty-four years earlier, and the 1988 recording of the deed put Victor on constructive notice of the conveyance so as to preclude any tolling of the statute of limitations period. The district court agreed that each of the three grounds precluded Armando's claim and dismissed the complaint.

## ISSUES AND STANDARD OF REVIEW

¶ 5 Armando challenges the three bases for the district court's decision to dismiss his 2012 complaint. He asserts that his claim was not barred by res judicata because, as the district court recognized in the first case, "the forgery claim ... differed significantly" from his contract and equitable claims. Armando also claims that the discovery rule

tolled the statute of limitations on his fraud claim until he discovered or reasonably should have discovered the facts that he alleges constitute fraud. Finally, he contends that he is a legal heir of Victor and thus was a real party in interest with standing to bring a claim regarding Victor's property.

¶ 6 "The propriety of a trial court's decision to grant ... a motion to dismiss under rule 12(b)(6) is a question of law that we review for correctness." *Mackey v. Cannon*, 2000 UT App 36, ¶ 9, 996 P.2d 1081 (citation and internal quotation marks omitted). When reviewing the grant of such a motion, "we accept the factual allegations in the complaint as true and interpret those facts and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff as the nonmoving party." [3] *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 3, 108 P.3d 741. All the subsidiary issues likewise involve questions of law. *See Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 9, 284 P.3d 622 ("Whether a claim is barred by res judicata is a question of law that we review for correctness."); *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 11, 156 P.3d 806 ("The applicability of a statute of limitations and ... the discovery rule are questions of law, which we review for correctness." (omission in original) (citation and internal quotation marks omitted)); *Anderson v. Dean Witter Reynolds, Inc.*, 841 P.2d 742, 744–45 (Utah Ct.App. 1992) (reviewing for correctness the propriety of the district court's dismissal on the basis that the beneficiary was not a real party in interest).

## ANALYSIS

### I. Res Judicata

¶ 7 The district court dismissed Armando's claim on the basis that it was barred by the claim preclusion branch of res judicata. "[C]laim preclusion corresponds to causes of action and bars a party from prosecuting in a subsequent action a claim that has

---

**3.** As we must, we accept the facts alleged as true for purposes of reviewing the dismissal. As a consequence, our factual analysis should not "preclude[ the district court] from making differ-ent findings of fact or conclusions of law" as the facts may develop, should the case go forward. *See Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 79, 289 P.3d 369.

been fully litigated previously." *State v. Sommerville*, 2013 UT App 40, ¶ 30, 297 P.3d 665 (alteration in original) (citations and internal quotation marks omitted). A claim is precluded if "the parties or their privies" have been involved in previous litigation, "the claim that is alleged to be barred [was] presented in the first suit or . . . could and should have been raised in the first action," and "the first suit . . . resulted in a final judgment on the merits." *Gillmor*, 2012 UT 38, ¶ 10, 284 P.3d 622 (citation and internal quotation marks omitted). "The second prong is often the most contested element," *id.*, and that is the case here, as Armando readily concedes that both cases involved the same parties and that the first action was resolved on the merits. Armando disputes, however, that his forgery claim could have or should have been raised in the 2010 complaint. First, he argues, the claim arises from a different set of facts and evidence of a different character than the breach of contract and equitable claims he asserted in the first suit. Second, Armando contends that he could not have brought the claim in the first action because the district court expressly prohibited him from doing so by denying his motion to amend on the basis that "the new claim is significantly different from those claims previously pleaded."

¶ 8 In *Gillmor v. Family Link, LLC*, 2012 UT 38, 284 P.3d 622, our supreme court adopted the transactional test for determining if a claim is precluded. *Id.* ¶¶ 12–13. "Under the transactional test, '[c]laims or causes of action are the same as those brought or that could have been brought in the first action if they arise from the same operative facts, or in other words from the same transaction.'" *Id.* ¶ 14 (alteration in original) (citation omitted). Thus, in considering whether claim preclusion applies, a court should assess (1) whether the claims possess a "common nucleus of operative facts," (2) "whether the facts are related in time, space, origin, or motivation" so as to (3) make "a convenient trial unit" because they depend on evidence of a similar kind or character and (4) "whether their treatment as a unit conforms to the parties' expectations." *Id.* (citations and internal quotation marks omitted).

¶ 9 Applying these factors, the *Gillmor* court concluded that Gillmor's causes of action aimed at establishing a public right of way (the second suit) were not precluded by her earlier lawsuit that asserted a private easement right over the same property (the first suit). *Id.* ¶¶ 17–22. In particular, the court noted that Gillmor's second suit involved facts relating to the usage of the road by *members of the public* dating back to the 1800s, whereas the first suit only concerned *the Gillmors' own use* since they acquired the property forty years before. *Id.* ¶¶ 17–18. Thus, the causes of action did not arise out of a common nucleus of operative facts. *Id.* ¶ 22. The supreme court also observed that the claims for relief in the second suit focused on public rights and public use, rather than private rights and private use, making them "legally [as well as] factually distinct from the claims advanced" in the first suit. *Id.* ¶ 19. Therefore, the prior private easement claim and the current highway-by-public use and public condemnation claims would not make a convenient trial unit because they did not involve a "significant overlap between the evidence necessary to establish the claims." *Id.* ¶¶ 19, 22. Finally, the court explained that although both suits involved Gillmor's access to the road, each suit sought a separate remedy—private access in the first suit versus public access in the second suit—and the parties reasonably would expect that an action to provide broader access to the public would be separate from litigation intended to resolve the rights to use of the road as between two private parties. *Id.* ¶¶ 20–21. Therefore, the supreme court concluded, the causes of action in the second suit did "not arise from the same transaction" as the first suit. *Id.* ¶ 23.

¶ 10 We reach the same conclusion here. Although both Armando's contract and equitable claims in the 2010 complaint and his fraud claim in the current suit aim to invalidate the deed, they arise from a separate set of operative facts. The 2010 claims were based on allegations of a decades-old agreement and understanding that if no Pierucci heir survived to take the one-half interest in the mineral rights transferred to John

and Marcheta, then the property was to be transferred to Armando upon John's death. The fraud claim in the present case, however, arose from Armando's alleged discovery in 2011 that the 1988 deed was not actually a legitimate transfer by Victor to John and Marcheta but rather was a forgery by Marcheta, John, or both of them.

¶ 11 In addition, the claims are legally distinct. To establish a breach of contract claim, one must show the existence of a contract between the plaintiff and defendant, performance by the plaintiff, non-performance by the defendant, and damages to the plaintiff. *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388. A fraud claim, on the other hand, requires the plaintiff to demonstrate

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35. Thus, "there is no significant overlap between the evidence necessary to establish the claims" and the two claims do not form a convenient trial unit. *See Gillmor*, 2012 UT 38, ¶ 22, 284 P.3d 622. Indeed, the district court itself recognized the factual and legal distinctions between the claims, declining to allow Armando to amend his original complaint to add a claim for fraud because "the new claim is significantly different from those claims previously pleaded."[4] For these reasons, the fraud claim need not have been "raised in the first action" and the second prong of the claim preclusion test is not satisfied. *See id.* ¶ 10.

¶ 12 Armando's fraud claim is therefore not precluded by res judicata. *See id.* (explaining that all three requirements must be present to preclude a claim).

## II.  Statute of Limitations

¶ 13 The district court also concluded that Armando's claim should be dismissed because the seven-year statute of limitations applicable to claims based upon title to real property had run. Armando contends that this was error because his claim is for fraud, and the statute of limitations period for fraud does not begin to run until after the plaintiff has discovered the fraud, a discovery he alleges he did not make until August 2011. Marcheta urges us to uphold the district court's conclusion that the statute of limitations period had expired. Alternatively, she asserts that the three-year fraud statute of limitations expired by 1991 because Victor necessarily discovered or should have discovered any fraud in the 1988 deed upon its recording because a recorded deed imparts constructive notice to all persons of its contents.

¶ 14 We first address whether Armando has alleged facts to support his contention that the statute of limitations period on the forgery claim had not expired because he did not discover the fraud until August 2011. We then turn to the issue of whether Victor's constructive notice of the deed in 1988 precludes Armando's reliance on the discovery rule to establish a start date for the limitations period in 2011.

A.  Armando's Allegation that He Did Not Discover the Forgery Until August 2011 Is Sufficient To Withstand a Motion to Dismiss.

¶ 15 Generally,

> [a]n action ... based upon title to the [real] property ... shall be brought: (1) not later than seven years after the act on

---

4. In his 2010 complaint, Armando also asserted claims for equitable estoppel and unjust enrichment and sought the imposition of a constructive trust. Like breach of contract, these claims are legally distinct from a fraud claim and depend upon proof of a separate set of facts. *See Salt*

*Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 41, 258 P.3d 539 (setting out the elements of equitable estoppel); *Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580 (setting out the elements of unjust enrichment).

which it is based; and (2) by the ancestor, predecessor, or grantor of the person who owned or possessed the property for seven years before the act in Subsection (1) took place.

Utah Code Ann. § 78B–2–207 (LexisNexis 2012). However, when the claim arises out of fraud, even if it concerns real property, "the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud." *Id.* § 78B–2–305(3). The aggrieved party must then commence litigation within three years of the date of discovery. *Id.; Russell Packard Dev., Inc. v. Carson,* 2005 UT 14, ¶ 21, 108 P.3d 741 (noting that the three-year statute of limitations for a fraud claim does not begin to run until "a plaintiff either discovered or should have discovered his or her cause of action").

¶ 16 In the May 2012 complaint, Armando alleged that he did not discover that the 1988 deed was forged until August 2011. Although Armando does not expand upon that general statement, we must not only accept it as true, *see Russell Packard,* 2005 UT 14, ¶ 3, 108 P.3d 741, we must also conclude that it is "sufficient to get him past a [motion to dismiss]," *Nunnelly v. First Fed. Bldg. & Loan Ass'n of Ogden,* 107 Utah 347, 154 P.2d 620, 633 (1944). Utah has adopted a liberal notice pleading standard, meaning that a complaint need only contain "a short and plain statement" of facts that "give[s] the defendant fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." *Canfield v. Layton City,* 2005 UT 60, ¶ 14, 122 P.3d 622 (citations and internal quotation marks omitted). Furthermore, a complaint need not anticipate any of a variety of affirmative defenses, including the statute of limitations, which a defendant must elect to raise. *Nunnelly,* 154 P.2d at

632; *see also* Utah R. Civ. P. 8(c) (listing the statute of limitations as an affirmative defense that the defendant must raise in a responsive pleading). "Otherwise, the complaint might be burdened with many allegations set forth solely for the purpose of anticipating a defense which might never be raised." *Nunnelly,* 154 P.2d at 632. Accordingly, "it is only necessary for [a plaintiff] to allege in the terms of the statute that the fraud was not discovered until a date within the period of limitations." *Id.* Because Armando has made such an allegation, his complaint is sufficient to withstand a motion to dismiss premised on the theory that the statute of limitations had expired—unless the recording of the 1988 deed itself conveyed notice of the fraud.[5]

### B. The 1988 Recording of the Deed Did Not Give Notice of the Forgery.

¶ 17 A recorded deed generally provides notice of its contents to all the world: "Each document executed, acknowledged, and certified, in the manner prescribed by this title, ... from the time of recording with the appropriate county recorder, impart[s] notice to all persons of their contents." Utah Code Ann. § 57–3–102(1) (LexisNexis 2010). This notice may be actual or constructive. A person has actual notice when he or she has been informed of the recorded document's contents. *Black's Law Dictionary* 1164 (9th ed.2009). Armando's complaint is sufficient to establish for purposes of the motion to dismiss that neither he nor Victor had actual notice of the 1988 deed transferring the mineral rights to Marcheta.

¶ 18 Constructive notice is "both (1) record notice which results from a record or which is imputed by the recording statutes, and (2) inquiry notice which is presumed

5. The statute setting forth the discovery rule only mentions "the *discovery* by the aggrieved party of the facts constituting the fraud," Utah Code Ann. § 78B–2–305(3) (LexisNexis 2012) (emphasis added), as a trigger for the running of the statute of limitations. However, Utah courts have concluded that the statute of limitations begins to run at the point when the aggrieved party actually discovers the fraud or *should have* discovered the fraud. *See, e.g., Russell Packard Dev., Inc. v. Carson,* 2005 UT 14, ¶ 21, 108 P.3d 741 (explain-

ing that the statutory discovery rule tolls the running of the statute of limitations until "a plaintiff either discovered or should have discovered his or her cause of action"); *Booth v. Attorneys' Title Guar. Fund, Inc.,* 2001 UT 13, ¶ 43, 20 P.3d 319 ("Discovery by the aggrieved party of the facts constituting an alleged fraud is measured from the time the fraud was actually known or could have been discovered through the exercise of reasonable diligence.").

because of the fact that a person has knowledge of certain facts which should impart to him, or lead him to, knowledge of the ultimate fact." *Federal Deposit Ins. Corp. v. Taylor*, 2011 UT App 416, ¶ 36, 267 P.3d 949 (citation and internal quotation marks omitted). Marcheta contends that because Victor was on constructive notice of the deed transferring ownership of the mineral rights to Marcheta by operation of the recording statutes, Armando cannot claim that the fraud was not discovered until 2011.

¶ 19 The Utah Supreme Court rejected this very contention in *Rasmussen v. Olsen*, 583 P.2d 50 (Utah 1978). There, the Rasmussens sold Olsen some real property in 1959. *Id.* at 51. In the written purchase agreement, the parties did not discuss who would own the mineral rights associated with the property, but the Rasmussens ultimately conveyed the property to Olsen in a deed specifically reserving the mineral rights for themselves. *Id.* Without the Rasmussens' knowledge, Olsen "altered the deed by obliterating the paragraph ... reserving the mineral rights" and then "recorded the altered deed." *Id.* The Rasmussens did not discover the alteration until late 1970 or early 1971, at which time they sued to quiet their title to the mineral rights. *Id.* Olsen asserted that "since he recorded the deed as altered, the recordation thereof gave notice to all the world that he claimed the mineral rights in the land, and therefore, the Rasmussens can do nothing because of the [running of the] statute of limitations." *Id.* at 52. The supreme court disagreed, concluding that "[t]he recording of a forged deed gives no notice to the world or to anybody within it of the contents thereof" because "[s]uch a deed is void." *Id.* at 52–53. The only effect of the altered deed's recordation was to "cloud the title of the Rasmussens to their mineral rights." *Id.* at 53. It did not trigger the statute of limitations so as to bar the Rasmussens' 1971 complaint for fraud after they discovered the alteration. *Id.*

¶ 20 *Rasmussen*'s approach aligns well with the purposes of the recording statutes: to "impede fraud, to foster the alienability of real property, and to provide predictability and integrity in real estate transactions," *Federal Deposit Ins. Corp.*, 2011 UT App 416, ¶ 23, 267 P.3d 949 (citation and internal quotation marks omitted). Adoption of Marcheta's constructive notice argument would permit a forged deed to overcome the lawful owner's title in cases, such as is alleged here, where the fraud is discovered after the passage of the statute of limitations. Adopting that view would not advance the purposes of impeding fraud and securing title. Accordingly, we conclude that Victor did not have constructive notice of the allegedly forged 1988 deed by virtue of its being recorded.

¶ 21 Because Armando alleged sufficient facts to support a claim that he did not discover the fraud in the 1988 mineral rights conveyance to Marcheta until 2011, we cannot affirm the district court's grant of the motion on this basis. Our ruling, however, is limited to the facts as alleged in the complaint, and we express no opinion on the merits of Armando's allegations should further proceedings occur.

### III. Real Party in Interest

¶ 22 Finally, Armando contends that the district court erred in dismissing his fraud claim on the basis that he did not have standing as a real party in interest. Rule 17 of the Utah Rules of Civil Procedure requires "[e]very [legal] action [to] be prosecuted in the name of the real party in interest." Utah R. Civ. P. 17(a). The "purpose of this rule is to allow defendants the right to have a cause of action prosecuted by the real party in interest in order for the judgment to preclude any action on the same demand by another." *Green v. Louder*, 2001 UT 62, ¶ 43, 29 P.3d 638 (emphasis omitted).

¶ 23 Armando claims that if the 1988 deed transferring the one-half interest in the mineral rights to Marcheta is in fact invalid, as he contends, then the interest should have been part of Victor's estate. And he asserts that Victor's heirs are the real parties in interest to any claim that Victor's estate might have to the mineral interest. According to Armando, his complaint contained sufficient factual allegations to establish his status as an heir.

¶ 24 Heirs are "persons, including the surviving spouse and state, who are entitled under the statutes of intestate succession to the property of a decedent." Utah Code Ann. § 75–1–201(21) (LexisNexis Supp. 2013).[6] The law governing intestate succession provides, inter alia, that an estate of a decedent without a will passes first to a surviving spouse, if there is one, then to the decedent's descendants per capita at each generation. *Id.* § 75–2–103(1)(a). Descendants are "all of [the decedent's] descendants of all generations," including children. *Id.* § 75–1–201(9); *see also* RandomHouse, Inc., *Dictionary.com Unabridged,* http:// dictionary.reference.com/browse/descendant (last visited July 1, 2014) (defining descendant as "a person or animal that is descended from a specific ancestor; an offspring"). Armando alleged in his complaint that Victor was his father and that Victor's spouse is also deceased, making Armando an heir of Victor's estate.

¶ 25 Armando's presumed status as an heir,[7] however, does not conclusively resolve the question of whether he is a real party in interest. A "real party in interest" is "[a] person entitled under the substantive law to enforce the right sued upon and who generally, but not necessarily, benefits from the action's final outcome." *Black's Law Dictionary* 1232 (9th ed.2009); *accord Industrial Comm'n v. Wasatch Grading Co.,* 80 Utah 223, 14 P.2d 988, 991 (1932) ("One having the legal title to a cause of action is a real party in interest."). But only "[a]n executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has made for the benefit of another, or a party authorized by statute"

can assert a claim on behalf of someone else. Utah R. Civ. P. 17(a). Because any claim to the mineral rights belonged to Victor and passed to his estate upon his death, we must determine who is authorized by rule or by statute to assert the claim.

¶ 26 Armando's claim that heirs are the real parties in interest to property within an intestate estate finds some support in *In re Cloward's Estate,* 95 Utah 453, 82 P.2d 336 (1938). There, the Utah Supreme Court noted, "The property of a decedent passes to the heirs (in whom the title vests at the death of the prior owner), subject only to administration." *Id.* at 342; *see also* Utah Code Ann. § 75–3–101 (Michie 1993) ("[I]n the absence of testamentary disposition," the "real and personal property devolves . . . to [the decedent's] heirs.").

¶ 27 However, Marcheta asserts that since the adoption of the Uniform Probate Code in 1975, Utah law has required claims belonging to the estate of the decedent to be prosecuted by the personal representative. To support her position, Marcheta cites Utah Code section 75–3–708, which provides that a personal representative "may maintain an action to recover possession of property or to determine the title thereto," Utah Code Ann. § 75–3–708 (Michie 1993), and section 75–3–714, which authorizes the personal representative to "prosecute or defend claims . . . for the protection of the estate," *id.* § 75–3–714(22). Armando is not, and never was, the personal representative of Victor's estate.[8]

¶ 28 The district court did not resolve this dispute. Indeed, the court seemed to accept that either an heir or a personal

---

6. The probate code has been amended since the time of Victor's death. Except where otherwise noted, the amendments do not involve substantive changes, and we therefore cite the current version for the reader's convenience.

7. To be declared an heir, one must request the probate court to make a finding of heirship as part of a petition for adjudication of intestacy made through formal testacy proceedings. Utah Code Ann. § 75–3–402(3) & uniform law comments (LexisNexis Supp.2013). Armando has alleged facts that would support a finding of heirship, and because we must accept all facts as alleged as true at the motion to dismiss stage, we accept, for purposes of reviewing the district

court's dismissal, that Armando is an heir to Victor's estate. *Russell Packard Dev., Inc. v. Carson,* 2005 UT 14, ¶ 3, 108 P.3d 741. The complaint alleges that John, Marcheta's husband and Armando's brother, is also deceased, but there is no information on whether Victor has other children still surviving. If there are, it makes no difference to our analysis because Armando has sufficiently alleged that he would be an heir, even if he is not the only one.

8. It appears that no probate proceedings for Victor's estate ever occurred, and as a consequence, no personal representative has ever been appointed.

representative could commence litigation on behalf of an estate but nevertheless granted Marcheta's motion on the basis that Armando had never "initiated proceedings to be declared a legally-recognized heir of Victor Pierucci's estate." Because Armando has alleged facts that would support a finding that he is an heir, even if he has never been formally declared to be one, *see Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 3, 108 P.3d 741, we move to the issue of whether an heir is a real party in interest who may prosecute a decedent's claim to real property. Armando has not established that an heir meets the requirements for a real party in interest under the circumstances of this case.

¶ 29 When a person dies without leaving a will, any interested person may file, within three years of the decedent's death, a petition for an adjudication of intestacy to determine whether the decedent died without a will and, if so, to identify the decedent's heirs for purposes of distributing the decedent's estate. Utah Code Ann. § 75-3-401(1); *id.* § 75-3-402(3) & uniform law comments (LexisNexis Supp.2013); *id.* § 75-3-107(1) (Michie 1993) (current version at *id.* (LexisNexis Supp.2013)); *see also id.* § 75-1-201(14) (LexisNexis Supp.2013) (defining estate as "the property of the decedent ... whose affairs are subject to [the probate code] as originally constituted and as it exists from time to time during administration"). As part of that process, the petitioner may also seek the appointment of a personal representative.[9] *Id.* §§ 75-3-402(1), -414 (Michie 1993). After three years have elapsed from the date of death, "the presumption of intestacy is final." Utah Code Ann. § 75-3-107(3). The court nonetheless retains jurisdiction "to handle all matters necessary to distribute the decedent's property." *Id.* This includes the authority to appoint a personal representative through the commencement of testacy proceedings. *In re Estate of Strand*, 2012 UT App 144, ¶¶ 5-6, 281 P.3d 268.

¶ 30 Appointment of a personal representative to administer an intestate estate is not required. *See* Utah Title 75, ch. 3, General Uniform Law Comments, Refs. & Annos. ("[A]n adjudication of intestacy may occur without any attendant requirement of appointment of a personal representative."). However, a personal representative, if appointed, acts as a fiduciary to the estate's heirs in settling and distributing the decedent's estate and is vested with the authority to sue and be sued on behalf of the decedent's estate. Utah Code Ann. § 75-3-703 (LexisNexis Supp.2013) (describing the general duties of a personal representative and conferring "standing to sue and be sued in the courts ... [in the same capacity] as his decedent"); *id.* § 75-3-714(22) (Michie 1993) (authorizing a personal representative to "prosecute or defend claims or proceedings in any jurisdiction for the protection of the estate").

¶ 31 Indeed, the probate code explicitly provides that whenever there are claims to be asserted against an estate, a personal representative must be appointed because the estate is not a legal entity. *Id.* § 75-3-104 ("No proceeding to enforce a claim against the estate of a decedent or his successors may be revived or commenced before the appointment of a personal representative."); Michael F. Dubis, Comment, *Fiduciary and Estate Liability in Contract and Tort*, 55 Marq. L.Rev. 297, 301 (1972) (explaining that breach of a fiduciary duty could not be brought against an estate because the "estate's not a legal entity"). Administration "under the tutelage of a personal representative" offers "protection for the various rights of the decedent's creditors, debtors and successors." Lawrence H. Averill Jr. & Mary F. Radford, *Uniform Probate Code and Uniform Trust Code in a Nutshell* 372 (6th ed.2001). The personal representative also obtains "the same power over the title to property of the estate that an absolute owner would have," except that he or she must

---

**9.** The probate code sometimes refers to the appointment of an administrator, rather than a personal representative, when referring to an intestate estate. *See, e.g.*, Utah Code Ann. § 75-3-402(3) (LexisNexis Supp.2013). The term " '[p]ersonal representative' " is broadly defined to include an "executor, administrator, successor personal representative, special administrator, and persons who perform substantially the same function under the law governing their status." *Id.* § 75-1-201(36)(a).

exercise that power "in trust ... for the benefit of the creditors and others interested in the estate." Utah Code Ann. § 75–3–710. A personal representative's authority commences with his or her appointment and the issuance of letters of administration, but the powers relate back in time to the decedent's death. *Id.* §§ 75–3–103, –701.

¶ 32 Armando has not directed us to any authority in the probate code, the pertinent real property or fraud code sections, or the case law on these subjects that grants an heir the power to bring this type of cause of action—to recover real property that was fraudulently obtained during the life of the decedent—on behalf of the estate. Indeed, the only authority that Armando does cite appears to be limited by its context and cannot be logically extended to reach the facts presented here. He cites *In re Estate of Thorley,* 579 P.2d 927 (Utah 1978), which concludes that heirs are authorized to contest a will. *Id.* at 928. Armando asserts that because heirs are the real parties in interest for a will contest, they must also be the real parties in interest for the purpose of bringing other claims from which they may ultimately benefit. The probate code, however, expressly allows any interested person to challenge a will. Utah Code Ann. § 75–3–401(1). The term "interested person" is defined to include heirs. *Id.* § 75–1–201(24) (LexisNexis Supp.2013). That the probate code would allow for an heir to make such a challenge makes sense, given that under the laws of intestacy, the heirs would take the decedent's property if a will were determined to be invalid. As a result, the heirs may be the persons with the most direct interest in a will contest, and they may also have the most

pressing incentive to initiate a testacy proceeding. Furthermore, because a personal representative is appointed with the commencement of a testacy proceeding, heirs may be the only persons in a position to initiate a will challenge. It does not follow from the fact that the probate code permits heirs to challenge a will that it also allows heirs to bring a direct action to recover fraudulently transferred property.[10] As a consequence, while it seems uncontroverted that a personal representative can bring an action to recover a decedent's property, Armando has failed to demonstrate that an heir can do so on his own. Accordingly, the district court's decision that Armando is not a real party in interest in this case must stand.[11]

## CONCLUSION

¶ 33 Because Armando has not persuaded us that the district court erred in dismissing the case on the ground that he had not shown that he was a real party in interest, we affirm. Our decision to affirm, however, does not preclude Armando from seeking any remedy suggested by rule 17 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 17(a) ("No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.").

---

10. In the district court, Armando also cited a trust case and a wrongful death case as support for his position that heirs may sue to recover real property that was fraudulently transferred. He has not cited these cases on appeal, and they seem to highlight the weakness of his claim that an heir is a real party in interest in connection with an attempt to recover a decedent's property. For instance, a trustee acts as a fiduciary to the beneficiaries of the trust, and the beneficiaries have independent authority to challenge the trustee's actions when he or she seems to be acting contrary to the beneficiaries' interests. *Anderson v. Dean Witter Reynolds, Inc.,* 841 P.2d 742, 745 (Utah Ct.App.1992). And the wrongful death statute specifically authorizes heirs to bring the claim because wrongful death is a statutory claim designed to compensate the heirs and is distinct from any action the decedent might have brought for personal injury had the decedent survived. *Haro v. Haro,* 887 P.2d 878, 879 (Utah Ct.App.1994); *see also Francis v. Southern Pac. Co.,* 162 F.2d 813, 816 (10th Cir.1947) (discussing Utah's wrongful death statute).

11. Because we resolve this issue based on Armando's failure to bear his burden of persuasion, our ruling does not go so far as to say that an heir cannot be a real party in interest in such a suit. We simply do not decide that issue.

And we have decided the other issues raised in order to assist the district court should the case ultimately continue in a restructured form. *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 79, 289 P.3d 369 (noting that appellate courts generally assist and guide the district court by addressing legal issues that are likely to arise again on remand).