**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2015-NMCA-090

Filing Date: June 26, 2015

Docket No. 33,236

SANDRA LEWIS,

     Worker-Appellee,

v.

AMERICAN GENERAL MEDIA and
GALLAGHER BASSETT,

     Employer/Insurer-Appellant.

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Terry S. Kramer, Workers' Compensation Judge

Peter D. White
Santa Fe, NM

for Appellee

Paul L. Civerolo, L.L.C.
Paul L. Civerolo
Albuquerque, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}** We are again called upon to address the application of the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013), to a worker certified to receive treatment with medical marijuana under the Lynn and Erin Compassionate Use Act (Compassionate Use Act), NMSA 1978, §§ 26-2B-1 to -7 (2007). In *Vialpando v. Ben's Automotive Services*, we held that the Workers' Compensation Act authorizes reimbursement for medical marijuana and declined to hold that federal law required a different result. 2014-NMCA-084, ¶¶ 1, 16, 331 P.3d 975, *cert. denied*, 331 P.3d 924 (2014). In *Maez v. Riley*

*Industrial*, we considered the sufficiency of the evidence that supported reimbursement for medical marijuana for the worker in that case. 2015-NMCA-049, 347 P.3d 732.

**{2}**     In this case, Gallagher Bassett and its insurer American General Media (collectively, Employer) challenge the sufficiency of the evidence supporting the conclusions of the Workers' Compensation Judge (WCJ) that the use of medical marijuana by Worker Sandra Lewis constituted reasonable and necessary medical care that required reimbursement. Specifically, Employer argues that the evidence offered by Worker's authorized health care provider was insufficient and that the WCJ erred by relying on testimony from an unauthorized health care provider who had provided a certification for Worker's use of medical marijuana under the Compassionate Use Act. Employer further argues that the conflict between New Mexico and federal law concerning the use of medical marijuana precludes the validity of the amended compensation order in this case. We hold that the medical certification forms and notes of Worker's authorized health care provider were substantial evidence to support the WCJ's conclusion that Worker's use of medical marijuana constitutes reasonable and necessary medical care and that, as discussed in *Vialpando*, the conflict between New Mexico and federal law does not support failing to give recognition to the amended compensation order. We therefore affirm.

**BACKGROUND**

**{3}**     Worker suffered a compensable, work-related injury to her lower back in December 1998. She underwent several surgical procedures and currently suffers from post-laminectomy syndrome in the lumbar region. She suffers chronic pain. Since her injury, Worker has taken numerous drugs as part of her pain management, including Oxycontin, oxycodone, Soma, Norflex, gabapentin, Lyrica, Percocet, fentanyl, and Zantac.

**{4}**     The issues concerning Worker's treatment began on April 16, 2012, when Employer filed an application requesting an independent medical examination (IME) in order to determine the scope of reasonable and necessary treatment for Worker's condition. In its application, Employer stated that Worker had been using medical marijuana and taking prescribed pain medication, which was inconsistent with Worker's belief that medical marijuana "is now the most effective medication from all of her different treatment and she is concerned by potential side effects." The WCJ appointed Dr. Carl Adams, a psychologist, "to address Worker's ongoing pain management and use of pain medications." Dr. Adams' recommendations, issued September 17, 2012, supported Worker's request to use medical marijuana to control her pain as reasonable and appropriate.

**{5}**     Worker was originally certified to participate in the New Mexico Department of Health Medical Cannabis Program (the program) on March 22, 2010. On July 31, 2012, Dr. Carlos Esparza, Worker's authorized health care provider, provided the written certification under the Compassionate Use Act for Worker to re-enroll in the program. As required by the Compassionate Use Act, Dr. Esparza certified that Worker had "debilitating" medical conditions (painful peripheral neuropathy and severe chronic pain) and that Worker had

2

"current unrelieved symptoms that have failed other medical therapies." Dr. Esparza stated that the "benefits of medical marijuana outweigh the risk of hyper doses of narcotic medications."

{6}     On May 30, 2013, Dr. Stephen I. Rosenberg, after a medical consultation as a second doctor required for certification of Worker's re-enrollment, also signed a certification form for Worker's re-enrollment in the program, listing Worker's condition as severe chronic pain and making essentially the same certifications as Dr. Esparza. On July 31, 2013, Joel Gelinas, a physician's assistant in Dr. Esparza's office, also signed a certification form for Worker's re-enrollment in the program. He listed Worker's condition as severe chronic pain and certified that Worker's condition was debilitating and that "standard treatments have failed to bring adequate relief."

{7}     After trial, conducted on August 8, 2013, the WCJ found that Worker's authorized health care provider was Dr. Esparza and physician's assistant Joel Gelinas and that "the office of Dr. Esparza" had recommended Worker "as a candidate for medical marijuana under the Compassionate Use Act." The WCJ concluded that Worker's use of medical marijuana under the program constituted reasonable and necessary medical care and required Employer to reimburse Worker for the receipts she submitted for her certified purchases. Employer filed this appeal.

**REASONABLE AND NECESSARY MEDICAL CARE**

{8}     As its first main argument, Employer challenges the sufficiency of the evidence supporting the WCJ's conclusion that Worker's use of medical marijuana constituted reasonable and necessary medical care. Employer asserts this challenge in two ways, arguing that (1) "[t]he record does not support [the WCJ's] finding that [W]orker was recommended as a candidate for medical marijuana under the [C]ompassionate [U]se [A]ct through the office of Dr. Esparza" and (2) the WCJ "went outside" the Workers' Compensation Act and interpreting case law "to rely on testimony by an unauthorized provider" to make its finding of reasonable and necessary care.

**Testimony of an Unauthorized Provider**

{9}     We first address Employer's argument that the WCJ improperly relied on the testimony of an unauthorized health care provider in determining that Worker's use of medical marijuana constituted reasonable and necessary medical care. In this regard, Employer contends that because Worker needed the certification of two health care professionals to be able to use medical marijuana under the Compassionate Use Act, the WCJ necessarily relied on the certification of Dr. Rosenberg in the WCJ's determination of the necessity of medical marijuana care. Thus, according to Employer, the WCJ improperly considered the certification of Dr. Rosenberg who was not qualified to present testimony under the Workers' Compensation Act because he was neither Worker's authorized health care provider nor a health care provider authorized to perform an IME. *See* § 52-1-51(C)

3

("Only a health care provider who has treated the worker . . . or the health care provider providing the independent medical examination . . . may offer testimony at any workers' compensation hearing concerning the particular injury in question.").

{10}    Employer's argument requires us to interpret the Workers' Compensation Act in connection with the Compassionate Use Act based on the facts of this case. We thus afford it de novo review. *Vialpando*, 2014-NMCA-084, ¶ 5.

{11}    Employer's argument fatally interconnects the Workers' Compensation Act and the Compassionate Use Act. In order for a worker to qualify for medical care after a compensable injury under the Workers' Compensation Act, the care must be "reasonable and necessary" care from a health care provider. Section 52-1-49(A). Typically, in the event of a dispute between a worker and an employer pertaining to the reasonableness or necessity of medical care, a worker will establish that care was reasonable and necessary through evidence provided by a health care provider. *See DiMatteo v. Doña Ana Cnty.*, 1985-NMCA-099, ¶ 26, 104 N.M. 599, 725 P.2d 575 (stating under previous version of Workers' Compensation Act that the worker had the burden of proving that his medical expenses were reasonably necessary). The Workers' Compensation Act restricts testimony in this regard to either a treating health care provider or an independent medical examiner. Section 52-1-51(C).

{12}    In order to qualify for medical marijuana under the Compassionate Use Act, "a person licensed in New Mexico to prescribe and administer" controlled substances must certify to the opinion that "the patient has a debilitating medical condition" as defined in the Compassionate Use Act and "the potential health benefits of the medical use of cannabis would likely outweigh the health risks for the patient." Section 26-2B-3(E), (H). Regulations promulgated by the New Mexico Department of Health require two written certifications when the debilitating medical condition is, as for Worker, severe chronic pain: one from a primary health care provider and one from a "specialist with expertise in pain management or . . . expertise in the disease process that is causing the pain"). 7.34.3.8(B)(1)(b) NMAC (12/30/2010)[1].

{13}    However, no statutory or regulatory provision connects these requirements under the two separate statutory schemes. Practically, a worker first must be enrolled in the medical marijuana program under the Compassionate Use Act before any issue can arise under the Workers' Compensation Act as to whether medical marijuana use is reasonable and necessary care. But, otherwise, the two determinations are not dependent on each other; they are made separately, at different times, and by different administrative authorities. No express provision of the Workers' Compensation Act grants a WCJ the authority to review a Department of Health enrollment determination. *See Jones v. Holiday Inn Express*, 2014-NMCA-082, ¶ 19, 331 P.3d 992 ("Since the [Workers' Compensation Administration] is a

---

[1]Section 7.34.3 NMAC was amended in 2015. The previous version (12/30/2010) is cited in this Opinion because it is applicable to the pending case.

4

creature of the Legislature, [the Court] cannot expand the [Workers' Compensation Administration's] jurisdiction over matters unless the Legislature expressly granted the [Workers' Compensation Administration] jurisdiction or jurisdiction can be found by necessary implication.").

**{14}** Thus, although the Department of Health requires that a person obtain two written certifications in order to be enrolled in the program and receive medical marijuana for severe chronic pain, the Workers' Compensation Act has no such quantitative requirements for a WCJ to determine that medical care is reasonable and necessary. Indeed, the Workers' Compensation Act contemplates that fewer, rather than more, professionals will provide input by restricting testimony to treating providers and independent medical examiners. Section 52-1-51(C). Nor does the Workers' Compensation Act require, as Employer urges, that a WCJ make a determination that a worker enrolled in the Medical Cannabis Program was properly eligible for medical marijuana use. The Compassionate Use Act and its associated regulations control the manner in which that determination is made, and the Department of Health bears the responsibility of approving applications for enrollment in the Medical Cannabis Program. *See* § 26-2B-7(G) (providing that the Department of Health shall issue registry identification cards for the Medical Cannabis Program to patients who submit applications in accordance with the Department's rules); *see also* 7.34.3.7(JJ) (12/30/2010) (defining "registry identification card" as "a document issued by the department which identifies a qualified patient authorized to engage in the use of cannabis for a debilitating medical condition" (internal quotation marks omitted)). All that is required by the Workers Compensation Act is that the WCJ determine, based on evidence from one or more authorized health care providers, whether a worker's medical treatment for a work injury is reasonable and necessary. Section 52-1-51.

**{15}** The facts of this case are illustrative. Dr. Esparza and Joel Gelinas were Worker's authorized health care provider. The evidence included their certifications for Worker's participation in the Medical Cannabis Program and use of medical marijuana as well as their related medical notes. Dr. Rosenberg, who was not an authorized health care provider under the Workers' Compensation Act, also submitted a written certification in support of Worker's enrollment in the program. *See* § 52-1-49 (stating the manner for selection of an authorized health care provider).

**{16}** Although Dr. Rosenberg's certification may have been necessary for Worker's enrollment in the program, it was unnecessary evidence to establish the reasonableness and necessity of Worker's medical care because Dr. Rosenberg was not an authorized health care provider. Thus, Employer argues that Worker's medical marijuana treatment could not be considered medically necessary because the WCJ could not consider the certification of Dr. Rosenberg as an unauthorized health care provider in meeting the eligibility requirements

of the Compassionate Use Act.[2] However, even though the administrative regulations promulgated by the Department of Health pursuant to the Compassionate Use Act may require more than one certification for the condition of severe chronic pain, nothing in the Workers' Compensation Act requires evidence from more than one health care provider in order to establish the reasonableness and necessity of medical care. Worker was enrolled in the Medical Cannabis Program; it was not the role of the WCJ to second-guess that determination, and the issue is not before us. In this regard, the only pertinent issue in this appeal is whether Worker presented substantial evidence to the WCJ for the WCJ to determine that medical marijuana use was reasonable and necessary medical care.

**Sufficiency of the Evidence**

**{17}** We thus turn to whether substantial evidence supported the WCJ's conclusion, taking into account Employer's arguments concerning the receipt in evidence of Dr. Rosenberg's certification.[3] We review for substantive evidence under a whole record standard of review. *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. "Whole record review contemplates a canvass by the reviewing court of all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result." *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177 (alteration, internal quotation marks, and citation omitted). Substantial evidence is evidence that demonstrates "the reasonableness of an agency's decision, and we neither reweigh the evidence nor replace the fact finder's conclusions with our own." *Dewitt*, 2009-NMSC-032, ¶ 12 (citation omitted). We give deference to the factfinder and will not disturb the WCJ's findings on appeal if they are supported by substantial evidence on the record as a whole. *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 6, 111 N.M. 550, 807 P.2d 734.

**{18}** The certification forms from both Dr. Esparza and Joel Gelinas stated that Worker suffered from severe chronic pain and that other treatment had not worked. Specifically, Dr. Esparza stated that the benefits of medical marijuana would "outweigh the risk of hyper doses of narcotic medications."

**{19}** Employer points to the medical notes of Dr. Esparza and Joel Gelinas and contends that they are equivocal statements and that the opinions expressed are not "of medical

---

[2]Employer also intimates on appeal that Dr. Rosenberg's certification could not support Worker's enrollment in the program because he was not Worker's primary physician. Employer, however, does not indicate the manner in which such an issue was preserved before the WCJ. "To preserve a question for review it must appear that a ruling or decision" below was fairly invoked. Rule 12-216(A) NMRA.

[3]The certification forms of Dr. Esparza, Dr. Rosenberg, and Joel Gelinas were all received in evidence over Employer's objection.

reasonableness and necessity." Dr. Esparza's July 17, 2012 medical notes state that Worker informed him that she had reduced her use of prescribed medications because she had been using medical marijuana. Dr. Esparza stated that "it would be reasonable for us to drop some of these narcotic medications in place of the medical marijuana if that is helping her. I would be happy to fill out her form for this." In Joel Gelinas' July 31, 2012 medical note, he observes that Worker stated that she needed a referral to her primary care doctor "so that [her use of medical marijuana] could be associated with her work injury." Worker was concerned that she was "using the marijuana to medically control her pain, which is related to her workers' compensation injury." Joel Gelinas noted that he told Worker that he would discuss the request with Dr. Esparza but that "[w]e generally do not refer patients to their primary care doctor for evaluation for a workers' compensation injury."

**{20}** When considered as a whole, the medical certification forms and notes of Dr. Esparza and Joel Gelinas are substantial evidence supporting the WCJ's determination. The medical certification forms certify Worker for enrollment in the program and clearly state that other treatments, that included narcotic medications, have failed. The medical certification forms are the functional equivalents of prescriptions. *Vialpando*, 2014-NMCA-084, ¶ 12. Further, Dr. Esparza expressly states in his note that "it would be reasonable" to replace some of Worker's narcotic medications if the medical marijuana was helping her and that he would be happy to complete her certification. We do not consider this language to be equivocal in view of Dr. Esparza's issuing the certification.

**{21}** Joel Gelinas' medical note does not detract from his certification. The practice of Dr. Esparza's office, by which Dr. Esparza and Joel Gelinas would not refer Worker to her primary physician in order to link Worker's use of medical marijuana to her work injury, does not impact the determination of whether Worker's use of medical marijuana is reasonable and necessary medical care. Dr. Esparza and Joel Gelinas were Worker's authorized health care provider who medically treated Worker; they were under no obligation to assist Worker with her legal claim. We assume that they issued their certifications in the good faith medical belief that Worker's use of medical marijuana would benefit her medical treatment. *Cf. Maez*, 2015-NMCA-049, ¶ 29 (holding that medical care was reasonable and necessary where the evidence did not support the inference that a health care provider failed to exercise medical judgment in certifying a worker for the Compassionate Use Act program). The fact that they did not refer Worker to her primary physician does not indicate that they did not have such a belief.

**{22}** Employer also argues that Dr. Esparza "would not have prescribed a controlled substance to [W]orker because it defies logic that a doctor holding a valid license would jeopardize himself or his patient by recommending illegal use of a controlled substance." According to Employer, Dr. Esparza's "discomfort with recommending or prescribing medical marijuana is underscored by his refusal to provide [W]orker with a referral to another doctor, even though she requested this referral." We are unpersuaded by this speculation. First, and significantly, Employer makes no reference to the record in support of his attributions to Dr. Esparza. *See* Rule 12-213(A)(4) NMRA (requiring an appellant to

7

provide citations to the record proper in support of each argument); *see also Fenner v. Fenner*, 1987-NMCA-066, ¶ 28, 106 N.M. 36, 738 P.2d 908 (holding that the Court need not consider arguments raised on appeal that are unsupported by record citations). Second, although federal law prohibits prescribing marijuana for medical use, the Compassionate Use Act specifically contemplates the use of medical marijuana in New Mexico as a form of medical treatment for certain conditions. 21 U.S.C. § 812 (2012); *see Gonzales v. Raich*, 545 U.S. 1, 27 (2005) (stating that "by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses"); Sections 26-2B-2 to -7. Third, Joel Gelinas' note is much too unclear to reach a conclusion that Dr. Esparza had adopted any office policy regarding referral of patients to their primary care doctors "for evaluation of a workers' compensation injury" because of any concern about medical marijuana.

**{23}**  We also do not believe that the testimony of Dr. Adams undercuts the WCJ's conclusion that medical marijuana constituted reasonable and necessary medical care. Dr. Adams, a psychologist, recommended in his IME report that he supported Worker's "request to begin medical cannabis use to control her pain" and that "her request seems reasonable and appropriate." In his deposition testimony, he again stated that he thought that medical marijuana was reasonable and advisable for treatment of Worker's pain. Although Dr. Adams did not state, as Employer contends, that "Worker's use of medical marijuana was a medical necessity," the absence of such testimony does not demonstrate that the WCJ's conclusion is unsupported by substantial evidence based on the evidence as a whole.

## CONFLICT WITH FEDERAL LAW

**{24}**  Employer additionally argues that the WCJ's order requiring it to reimburse Worker raises a conflict between federal and state law and that, with such conflict, the federal law preempts state law, rendering the WCJ's order without effect. This argument presents an issue of law that we review on a de novo basis. *See Largo v. Atchison, Topeka & Santa Fe Ry. Co.*, 2002-NMCA-021, ¶ 5, 131 N.M. 621, 41 P.3d 347 (stating that federal preemption is a question of law that the Court reviews de novo).

**{25}**  We agree with Employer that the Controlled Substances Act (CSA), 21 U.S.C. §§ 801-904 (2012) conflicts with the Compassionate Use Act in that the CSA does not except marijuana used for medical purposes from its prohibition of possession or distribution of even small amounts of marijuana. 21 U.S.C. §§ 812, 822, 823(f); *Gonzales*, 545 U.S. at 27 (stating that the CSA "designates marijuana as contraband for *any* purpose"). In *Vialpando*, we recognized that "the Supremacy Clause dictates that any conflict between the Compassionate Use Act and the CSA would be resolved in favor of the CSA." *Vialpando*, 2014-NMCA-084, ¶ 15.

**{26}**  Nonetheless, we declined to reverse the WCJ's order in *Vialpando* based on either federal law or public policy, observing that the employer had not demonstrated that the order would have required it to violate a federal statute and that federal public policy was

8

ambiguous in contrast with New Mexico's clear public policy expressed in the Compassionate Use Act. *Id.* ¶¶ 15-16. Employer would distinguish *Vialpando* on two grounds: (1) a second memorandum issued by the United States Department of Justice (Department of Justice) subsequent to the memorandum discussed in *Vialpando* indicates that New Mexico law does not meet the standard contemplated by the Department of Justice; and (2) in contrast to *Vialpando*, Employer has identified the federal statute that would embrace Employer's activity in carrying out the WCJ's order.

**{27}** As to the initial memorandum, in *Vialpando* we discussed the memorandum from James M. Cole, Deputy Attorney General, to All United States Attorneys, entitled Guidance Regarding Marijuana Enforcement, dated August 29, 2013. *Vialpando*, 2014-NMCA-084, ¶ 16. We noted that the memorandum was not dispositive, but included "equivocal statements about state laws allowing marijuana use for medical and even recreational purposes." *Id.* We observed that, although the memorandum affirmed that the CSA declared marijuana to be illegal and that federal prosecutors would continue to enforce the CSA, the memorandum identified eight areas of enforcement priority that did not include medical marijuana. *Id.* ¶ 16 n.1. Beyond those priorities, the memorandum indicated that the Department of Justice "would generally defer to state and local authorities." *Id.* ¶ 16.

**{28}** According to Employer, the New Mexico statutory and regulatory scheme is not sufficient to satisfy Department of Justice requirements that justify deference to state law. Employer points to language in the second memorandum that indicates that the Department of Justice's position "rested on the expectation that states that have enacted laws authorizing marijuana-related conduct will implement clear, strong and effective regulatory and enforcement systems in order to minimize the threat posed to federal enforcement priorities." Memorandum from James M. Cole, Deputy Attorney General, to All United States Attorneys, Guidance Regarding Marijuana Financial Related Crimes (February 14, 2014).

**{29}** More particularly, Employer argues that the Workers' Compensation Act and the Compassionate Use Act do not meet the standard set forth in the second memorandum. However, as we stated in *Vialpando*, the New Mexico Legislature adopted the Compassionate Use Act "to allow the beneficial use of medical cannabis in a regulated system for alleviating symptoms caused by debilitating medical conditions and their medical treatments." 2014-NMCA-084, ¶ 16 (quoting Section 26-2B-2 (internal quotation marks omitted)). It is not clear the manner in which any deficiency in this system is an issue in this case, and Employer's arguments in this regard are not specific.

**{30}** Employer seems to fault the WCJ for failing to provide oversight for Worker's purchase and use of medical marijuana by failing to provide a mechanism by which Worker would be responsible for demonstrating her purchases are consistent with law or that would allow Employer to investigate "the legitimacy" of Worker's purchases. But, the WCJ's amended compensation order requires Employer's reimbursement only upon Worker submitting timely receipts for medical marijuana "purchased consistent with law." Worker demonstrated that she was a certified participant in the medical marijuana program. If

9

Employer is not satisfied that Worker is submitting "legitimate" receipts, Employer has recourse through the Workers' Compensation Act and the Workers' Compensation Administration. *See* NMSA 1978, § 52-10-1(A) (1990) (requiring that a health care provider release to an employer or employer's insurer, upon request, medical bills related to medical care service provided to a worker); *see also* NMSA 1978, § 52-5-1.3 (2013) (requiring the Workers' Compensation Administration's Enforcement Bureau to investigate fraudulent conduct concerning the payment of benefits to a worker).

**{31}** To the extent that Employer argues that the New Mexico laws and regulations are not sufficient to obviate Employer's exposure to violation of federal law, its argument overlaps with the second aspect of its argument to distinguish *Vialpando*—that it has identified its continued federal exposure. According to Employer, if it were to follow the WCJ's order, and despite the Department of Justice's memoranda, it would be civilly responsible for violation of the CSA by way of conspiracy or aiding and abetting. As distinguished from *Vialpando*, Employer cites the federal statutes it believes would implicate him, 21 U.S.C. § 841A(a) (prohibiting a person from knowingly possessing a controlled substance as defined by federal law and in an amount specified by the United States Attorney General); 21 U.S.C. § 846 (prohibiting a person from attempting or conspiring to commit a violation of federal law related to controlled substances under 21 U.S.C., Chapter 13, Subchapter 1); 18 U.S.C. § 2(a) (2012) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

**{32}** However, Employer's argument raises only speculation in view of existing Department of Justice and federal policy. Nothing in the Department of Justice's second memorandum alters its position regarding the areas of enforcement set forth in the initial memorandum. Medical marijuana is not within the list. Moreover, on December 16, 2014, the Consolidated and Further Appropriations Act of 2015 to fund the operations of the federal government was enacted. It states that "[n]one of the funds made available in this Act to the Department of Justice may be used, with respect to the [s]tates of . . . New Mexico, . . . , to prevent such States from implementing their own State laws that authorize the use, distribution, possession or cultivation of medical marijuana." We reach the same conclusion that we did in *Vialpando*. In view of the equivocal federal policy and the clear New Mexico policy as expressed in the Compassionate Use Act, we decline to reverse the WCJ's amended compensation order.

**CONCLUSION**

**{33}** We affirm the amended compensation order.

**{34} IT IS SO ORDERED.**

---

**JAMES J. WECHSLER, Judge**

10

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**

_____

**M. MONICA ZAMORA, Judge**